IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CANDACE E. TAYLOR | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:21-cv-294-HSO-BWR |
| | § | |
| DENIS MCDONOUGH, Secretary | § | |
| for U.S. Department of Veterans | § | |
| Affairs | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT DENIS
MCDONOUGH, SECRETARY FOR U.S. DEPARTMENT OF VETERANS
AFFAIRS' MOTION [44] FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendant Denis McDonough, Secretary for the

U.S. Department of Veterans Affairs' Motion [44] for Summary Judgment. The

Motion [44] is fully briefed. After due consideration of the Motion [44], the parties'

submissions, and relevant legal authority, the Court finds that the Motion [44]

should be granted.

## I. BACKGROUND

A.   Factual background

Plaintiff Candace E. Taylor ("Plaintiff" or "Taylor") began her employment at

the Department of Veterans Affairs ("VA") in 2013, as a Medical Administrative

Support ("MAS") Assistant. Ex. [44-1] at 13-14. From 2013 to 2017, as part of her

duties Plaintiff interacted with coworker William Hardy ("Hardy"), who worked in

the VA's Equal Employment Opportunity ("EEO") office. *Id.* at 20-23. During this

time, Plaintiff maintains that all of her personal interactions with Hardy were

respectful and professional. *Id.* at 24.

In March 2017, Plaintiff transitioned into a new role as the EEO Program Assistant and began reporting directly to Hardy. *Id.* at 27; Am. Compl. [5] at 2-3; Ex. [44-2]. Plaintiff alleges that sometime thereafter, Hardy's behavior towards her became inappropriate. Am. Compl. [5] at 2-5. She claims that on numerous occasions between April and September 2017, Hardy sexually harassed her in the office and sent her sexually harassing text messages. Ex. [44-1] at 58-61, 87-88, 102; Ex. [44-3] at 5-9. For example, Plaintiff alleges that sometime in April 2017, Hardy expressed to her that he was sexually frustrated at home and commented on her physique. Ex. [44-1] at 58-61. Plaintiff explained in her deposition that she did not report this interaction because she was worried about retaliation, and that Hardy continued to make comments about her body for the next two weeks. *Id.* at 64, 72-73, 75-76.

Plaintiff also described an incident where Hardy allegedly "pressed his body up against [hers]" and said "[y]ou have very nice jugs." *Id.* at 78-80. Shortly after this incident, on or about April 24, 2017, Hardy sent Plaintiff a series of text messages stating, among other things, "I ask to kiss your jugs that has not happened," and "R [sic] u [sic] getting dressed for work . . . I guess you have clothes on." Ex. [44-3] at 1. Again, Plaintiff testified that she did not report Hardy's conduct because she feared "facing reprisal," and because she believed Hardy would not be disciplined. Ex. [44-1] at 74-76. On May 24, 2017, Hardy sent Plaintiff a photograph of himself via text message, writing "I look great . . . Get FaceTime and you could see more lol . . . Thank you." Ex. [44-3] at 2. Also sometime in May 2017, while at a

work-related event, Hardy allegedly told Plaintiff that "he was just tempted to take [her] into the bathroom to have sex," and informed her that he was allergic to latex condoms as an "FYI" in case they ever had sexual intercourse. Ex. [44-1] at 87-88.

According to Plaintiff, over the next three months, Hardy engaged in "bad management" and continued to make inappropriate comments to her, such as stating "hopefully I'll get lucky one of these days," but that his behavior "wouldn't be as aggressive as it was before . . . It wouldn't be direct contact like it was before." *Id.* at 95-102. When asked if she spoke with anyone about Hardy's behavior during this time period, Plaintiff testified that "there was nobody that [she] could talk to." *Id.* at 103.

On September 10, 2017, Hardy texted Plaintiff "[y]ou did not want me to go because you knew you would be a bad girl . . . You may deny it but you know what probably would have happened . . . It is all good and may never happen . . . I want it but you are so hesitant." Ex. [44-3] at 5-6. Then, on September 20, 2017, Hardy texted Plaintiff saying, "I made you show a side you did not want to and I regret that . . . Crying and hurting you . . . The last I want to do is hurt you. Just because I can't get what I want should not be a reason to be mean to you." *Id.* at 9. Plaintiff does not make any further allegations of sexual harassment after this message.

In mid-October 2017, Hardy approached Plaintiff about transitioning to a new role outside of the EEO office, because they were no longer speaking with each other. Ex. [44-4] at 1-2. On October 23, 2017, Plaintiff met with coworker Kimberly Booker ("Booker") and Human Resources Manager Constance Ceasar ("Ceasar") at a

restaurant in Biloxi, Mississippi, and claims that she spoke about Hardy's conduct for the first time. Mem. [46] at 4; Ex. [44-1] at 130-32. As Defendant points out, both Plaintiff and Ceasar's deposition testimony about the substance of their October 23, 2017, conversation and chronology of events that month are inconsistent with each other as well as with other proffered summary judgment evidence. Mem. [45] at 6-7. For example, in an e-mail to Ceasar dated November 17, 2017, Plaintiff states that she had not spoken to "anyone else" about Hardy's conduct towards her until she made a formal complaint on October 30, 2017, and she makes no reference to any earlier conversation with Booker and Ceasar. Ex. [44-4] at 3. In the same email, Plaintiff states that she agreed to move out of the EEO office because of harassment, bullying, and threats to her job by Hardy, and because she "had already asked Human Resources to move [her]" because she could no longer continue to work with Hardy. Ex. [44-4] at 1.

The parties do agree that on October 24, 2017, Plaintiff made an anonymous, informal complaint regarding Hardy's conduct to the Office of Resolution Management ("ORM"). Mem. [45] at 7 n.56; Mem. [46] at 4. The parties also agree that Plaintiff made a formal complaint of sexual harassment to EEO counselor Mary Sloan at ORM on October 30, 2017. Mem. [45] at 7 n.56; Mem. [46] at 4; Ex. [44-1] at 43, 160. It is undisputed that Plaintiff was immediately moved from the EEO office and specially detailed to MAS the following day, and that an investigation into Hardy's conduct commenced. Ex. [44-1] at 160. Although Plaintiff claims that she was made to return to the EEO office on November 3, 2017, she

4

acknowledged that she did not see Hardy again after October 31, 2017, because he was away from the office at a training and she was detailed back to MAS before his return. Ex. [44-1] at 161-62; Ex. [44-4] at 2-3. Plaintiff remained on detail at MAS until April 2018, applied for a permanent position at MAS sometime thereafter, and eventually transitioned to a higher-level role in Tuscaloosa, Alabama. Ex. [44-8]; Ex. [44-1] at 194-96.

As a result of the investigation into Plaintiff's claims, the agency first temporarily reassigned Hardy, Ex. [44-6], and ultimately prepared a notice of proposed removal for conduct unbecoming of a federal employee, Ex. [44-7]. Hardy resigned in lieu of termination. Ex. [44-1] at 41. Plaintiff testified that between March and October 2017, she did not suffer any demotion, discipline, reduction in pay, or change in benefits at work. *Id.* at 170-71, 190-91.

B.    Procedural history

Plaintiff first filed suit on September 13, 2021. On September 19, 2021, she filed an Amended Complaint [5] against Defendant Denis McDonough, Secretary for U.S. Department of Veterans Affairs ("Defendant") in this case, alleging claims for sexual harassment under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq. Am. Compl. [5] at 1. Defendant has now filed the present Motion [44] for Summary Judgment, seeking dismissal of Plaintiff's claims. *See generally* Mot. [44].

The parties do not dispute that Hardy sexually harassed Plaintiff. Mem. [45] at 1. Instead, Defendant principally contends that Plaintiff's claims are barred by

the affirmative defense created by the United States Supreme Court in *Burlington Industries., Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), known as the "Ellerth/Faragher defense," and Defendant additionally argues that Plaintiff's claims are barred as a result of her failure to report Hardy's conduct to an EEO counselor within forty-five days of the alleged sexual harassment, as required by 29 C.F.R. § 1614.105(a)(1). *Id.* at 13-14.

Plaintiff responds that the Ellerth/Faragher defense is inapplicable because she suffered tangible employment actions, Resp. [46] at 8-10, that she had received no formal training for the assistant EEO job and there were no postings of the EEO process in her workplace, *id.* at 12, that Defendant failed to utilize reasonable care to prevent and promptly correct Hardy's behavior, *id.* at 14, and that Defendant waived the forty-five day filing requirement by investigating and resolving her claims. *Id.* at 15. Having carefully considered the competent summary judgment evidence and relevant legal authority, the Court is of the opinion that Defendant's Motion [44] should be granted.

## II. DISCUSSION

### A. Summary judgment standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Saketkoo v. Admins. of Tulane*

*Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (quoting *Hamilton*, 232 F.3d at 477). The movant must "identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact.'" *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Expl., L.L.C.*, 767 F.3d at 511 (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002)). When considering the record, the Court must view all evidence in the light most favorable to the nonmovant and draw all reasonable inferences in her favor. *Id.*

B.   <u>Plaintiff's failure to timely contact an EEO counselor</u>

As an initial matter, almost all of Plaintiff's allegations of sexual harassment by Hardy are time-barred. "Aggrieved persons who believe they have been discriminated against on the basis of . . . sex . . . must consult a Counselor prior to

filing a complaint in order to try to informally resolve the matter," and they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a). Although the Fifth Circuit has "held that the requirement of timely contacting an EEO counselor is non-jurisdictional," it is still "a pre-suit requirement." *Baker v. McHugh*, 672 F. App'x 357, 361 (5th Cir. 2016) (citing *Green v. Brennan*, 578 U.S. 547, 551 (2016)). Absent waiver, estoppel, or equitable tolling, a plaintiff's failure to contact an EEO counselor in a timely fashion will bar her claims. *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). Here, it is undisputed that Plaintiff first contacted ORM anonymously on October 24, 2017, and made a formal complaint to EEO counselor Mary Sloan on October 30, 2017. Mem. [45] at 7 n.56; Mem. [46] at 4; *Id.*; Ex. [44-1] at 43, 160. Even taking the earlier date of Plaintiff's informal contact with ORM, all of her allegations of sexual harassment are untimely, with the only exceptions being the September 10, 2017, and September 20, 2017, text messages from Hardy.[1]

Plaintiff argues that Defendant waived the forty-five-day timeliness requirement because "Defendant accepted, investigated, and decided Plaintiff's case administratively," only to subsequently raise the timeliness argument. Mem. [46] at 15. In support of waiver, Plaintiff cites three cases, *Zipes v. TWA*, 455 U.S. 385 (1982), *Munoz v. Aldridge*, 894 F.2d 1489 (5th Cir. 1990), and *Barnes v. Breeden*, 911 F. Supp. 1038 (S.D. Tex. 1996). Critically, all three of these cases specifically

---

[1] Plaintiff does not contend that her October 23, 2017, meeting with Ceasar and Booker constituted "contact with a Counselor" as required by 29 C.F.R. § 1614.105(a), *see* Mem. [46] at 4; Ex. [44-1] at 130-32, and she concedes that only the conduct alleged to have taken place on September 10, 2017, and September 20, 2017, fell within the forty-five-day period, *see* Mem. [46] at 15 n.5.

address whether "any claim of untimeliness in filing a charge of discrimination
**with the SEC** may be waived," and they do not implicate 29 C.F.R. § 1614.105(a) at
all. *Barnes*, 911 F. Supp. at 1046 (citing *Zipes* and *Munoz*) (emphasis added). And
the law in this Circuit is clear that waiver of the forty-five-day requirement
prescribed by 29 C.F.R. § 1614.105(a) requires more than agency action and
investigation of an untimely complaint. *Reveles v. Napolitano*, 595 F. App'x 321, 325
(5th Cir. 2014). As the Court in *Reveles* explained, "waiver requires a specific
finding on the issue of timeliness," and "the docketing and acting on a complaint or
request for reconsideration does not alone constitute a waiver of the timeliness
objection." *Id.* at 325-26 (5th Cir. 2014) (finding that the timeliness argument was
not waived where "the EEOC did not make a specific finding that Reveles's contact
with an EEO counselor was timely"); *see also Werner v. Dep't of Homeland Sec.*, 441
F. App'x 246, 249 (5th Cir. 2011) (citing *Rowe v. Sullivan*, 967 F.2d 186, 191 (5th
Cir. 1992) ("In order to waive a timeliness objection, the agency must make a
specific finding that the claimant's submission was timely.")).

Plaintiff does not contend that the VA made a specific finding that her
contact with an EEO counselor was timely, nor does she provide any additional
basis for waiver, estoppel, or tolling.[2] *See generally* Mem. [46]. Although Plaintiff
was aware of Hardy's sexually harassing conduct as early as April 2017, she waited

---

[2] Although Plaintiff did not argue or brief equitable tolling, the Court notes that "vague and
conclusional allegations" that she failed to timely contact an EEO counselor for fear of retaliation,
reprisal, or agency inaction, *see* Ex. [44-1] at 64, 74-76, are insufficient, *Baker*, 672 F. App'x at 361
(citing *McCrimmon v. Wells Fargo Bank, N.A.*, 516 F. App'x 372, 375 (5th Cir. 2013)).

more than six months to contact ORM, on October 24, 2017.[3] The Court concludes that all of Plaintiff's allegations are time-barred, with the exception of the September 10, 2017, and September 20, 2017, text messages from Hardy.

C.    Defendant's Ellerth/Faragher affirmative defense

In *Ellerth* and *Faragher*, the Supreme Court outlined a road map for imposing vicarious liability on an employer when a supervisory employee is accused of sexual harassment. *See generally Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). In these dual decisions, the Supreme Court held that an employer may escape liability for a supervisory employee's conduct if it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and the complaining employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to otherwise avoid harm, thereby promoting "Title VII's equally basic policies of encouraging forethought by employers and saving action by objecting employees." *Faragher,* 524 U.S. at 807; *Ellerth*, 524 U.S. at 764-65.

The first step in the Ellerth/Faragher analysis is to determine whether the complaining employee suffered a "tangible employment action." *Casiano v. AT&T*

---

[3] Although Plaintiff did not argue or brief the "continuing violation" exception to the forty-five-day limitations period, the Court notes that the exception does not apply where, as here, the alleged offenses are "discrete" and "in some instances blatant," such that they "[do] not require accumulation for their discriminatory character to be apparent." *Mariegard v. Wynne*, No. 1:06-CV-53, 2008 U.S. Dist. LEXIS 19316, at *19 (N.D. Miss. Mar. 12, 2008) (concluding that the plaintiff was precluded from asserting the continuing violation exception because he had been on notice of discrete acts of allegedly "degrading" conduct such that his duty to assert his rights had been triggered); *see also Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997) (explaining that under the continuing violation exception, a plaintiff must prove that a "persisting and continuing system of discriminatory practices" produces "effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time," and that one of the acts falls within the limitations period).

*Corp.*, 213 F.3d 278, 283 (5th Cir. 2000). A tangible employment action requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761-62.

If there is a tangible employment action, then the case is classified as a quid pro quo case, and the Ellerth/Faragher defense is unavailable. *Casiano,* 213 F.3d at 283-84. If there is not a tangible employment action, the Court must examine the claim as one for a hostile work environment, *Williams v. Barnhill's Buffet, Inc.*, No. 2:06cv148-KS-MTP, 2007 U.S. Dist. LEXIS 95568, at *6 (S.D. Miss. Jan. 8, 2007), and determine if "the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment," *Casiano*, 213 F.3d at 278.

Finally, if it is determined that there was severe or pervasive sexual harassment rising to the level of a hostile work environment, the employer is vicariously liable unless it can prove both prongs of the Ellerth/Faragher defense: (1) that the employer exercised reasonable care to prevent and correct promptly any such sexual harassment; and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise. *Id*.

1.    <u>Plaintiff's failure to establish a tangible employment action</u>

A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits, and

"in most cases, a tangible employment action inflicts direct economic harm."
*Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 170 (5th Cir. 2018) (citing
*Ellerth*, 524 U.S. at 761-62) (internal quotations omitted)). Defendant argues that
Plaintiff cannot establish a tangible employment action because "she did not receive
any pay cuts, or discipline, or demotions, during the period of the alleged
harassment." Mem. [45] at 9 (citing Ex. [44-1] at 170-71, 190-91). Plaintiff responds
that her transfer to MAS, resulting loss of prestige, and threats of termination by
Hardy constituted tangible employment actions. Mem. [46] at 8-9 (citing Ex. 46-1 at
32-33, 200-02). She also appears to suggest that she was constructively discharged.
*Id.* at 9 n.4. The Court agrees with Defendants.

Plaintiff's transfer to MAS was not a tangible employment action because not
only did she agree to the detail, she requested it. Mem. [46] at 4; Ex. [46-13]; Ex.
[44-4]. It is undisputed that Hardy, the accused harasser, did not make the decision
to move Plaintiff to MAS, and that Ceasar was the authorizing manager. Ex. [46-1]
at 139-41. Plaintiff testified that after learning of her MAS detail, Hardy was so
upset that he threatened to "AWOL" her if she did not return. *Id.* Courts have found
there to be no tangible employment action when a manager other than the accused
authorizes the action in question. *See Harper v. City of Jackson Mun. Sch. Dist.*, 149
F. App'x 295, 299 (5th Cir. 2005) (finding no tangible employment action where an
employee was transferred to another school district by a new principal, not the
alleged harasser, and there was no evidence linking the alleged harasser to the
transfer); *Casiano*, 213 F.3d at 284-85 (finding no tangible employment action

where an employee was denied access to a training program because another manager, not the harassing supervisor, was responsible for the decision). Plaintifff's transfer to MAS did not inflict significant adverse changes on her employment or inflict direct economic harm, and Plaintiff testified that she did not suffer any demotion, discipline, reduction in pay, or change in benefits. Ex. [44-1] at 170-71, 190-91.

Although Plaintiff argues that the MAS position involved lesser responsibilities and prestige, she does not provide any specific detail or bases to support these assertions. Ex. [46-1] at 201-02. For an allegedly undesirable reassignment to constitute a tangible employment action, a plaintiff must "present evidence that the prior position was objectively superior so that . . . reassignment could be considered a demotion." *Seibert v. Jackson Cty.*, No. 1:14-CV-188-KS-MTP, 2015 U.S. Dist. LEXIS 102632, at *5 (S.D. Miss. Aug. 5, 2015) (citing *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009)). Plaintiff's contention that the MAS position was less prestigious or otherwise less desirable is further belied by the fact that she later applied to work permanently in MAS, in the exact same position to which she was detailed. *See* Ex. [47-1] at 160. Beyond conclusory allegations, Plaintiff has not presented evidence to show that the EEO position was objectively superior to the MAS detail. *See Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."). For

these same reasons, the facts do not support any suggestion that Plaintiff's transfer to MAS constituted a constructive discharge. *See Brown v. Bunge Corp.*, 207 F.3d 776, 782–83 (5th Cir. 2000) (no constructive discharge even where the employee was demoted and given fewer job responsibilities compared to previous position).

Finally, threats of termination, in the absence of termination in fact, are insufficient to establish a tangible employment action. *See, e.g., Lopez v. Ajuua's Mexican Rest., Inc.*, No. MO:18-CV-00187-DC, 2019 U.S. Dist. LEXIS 248316, at *8 (W.D. Tex. Aug. 18, 2019) ("Although Plaintiff alleges Rubio's threat of termination, her pleadings fail to show that she was terminated in fact and therefore do not establish a tangible employment action for purposes of her quid pro quo sexual harassment claim."); *Seibert*, 2015 U.S. Dist. LEXIS 102632, at *5 ("threats of termination or demotion are not tangible employment actions and, therefore, are not actionable as a quid pro quo claim") (citing *Ellerth*, 524 U.S. at 760-66)).

In sum, the Court is of the opinion that Plaintiff has failed to establish a tangible employment action, and it will therefore analyze her claim as one for a hostile work environment. *See Williams*, 2007 U.S. Dist. LEXIS 95568, at *6.

2.    <u>Whether Plaintiff has alleged severe or pervasive harassing conduct</u>

The Court must next determine whether the two timely alleged incidents of sexual harassment created an actionable hostile work environment. *Young v. R.R. Morrison & Son, Inc.*, 159 F. Supp. 2d 921, 925 (N.D. Miss. 2000). In order to establish conduct giving rise to a hostile work environment, the alleged harassment must "affect a term, condition, or privilege of employment." *McKneely v. Zachary*

*Police Dep't*, No. 12-354-SDD-RLB, 2013 U.S. Dist. LEXIS 122905, at *18 (M.D. La. Aug. 28, 2013) (citing *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008)). In other words, "the harassing conduct must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 479 (citing *Lauderdale v. Tex. Dep't of Crim. Just., Institutional Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotations omitted)). "The work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (citing *Faragher*, 524 U.S. at 787 (internal quotations omitted)).

Defendant does not dispute that Hardy behaved inappropriately towards Plaintiff, and indeed the VA concluded through its internal investigation that his sexually harassing behavior, taken as a whole, was egregious enough to warrant his removal. Mem. [45] at 1; Ex. [44-7]. However, as previously discussed, due to Plaintiff's failure to timely initiate contact with an EEO counselor about her claims, the only timely allegations of sexual harassment within the purview of the Court's examination are the two September 2017 text messages Hardy sent her.

The timely allegations include a series of messages from Hardy stating: "[y]ou did not want me to go because you knew you would be a bad girl . . . You may deny it but you know what probably would have happened . . . It is all good and may never happen . . . I want it but you are so hesitant," Ex. [44-3] at 5-6, and "I made you show a side you did not want to and I regret that . . . Crying and hurting you

. . . The last I want to do is hurt you. Just because I can't get what I want should not be a reason to be mean to you," *id.* at 9.

Because Defendant does not address or dispute the severity or pervasiveness of Plaintiff's timely allegations in its Motion [44], the Court will assume that Plaintiff has at least demonstrated the existence of a genuine issue of material fact as to this question and proceed to the next step of the Ellerth/Faragher analysis. *See Young*, 159 F. Supp. 2d at 925 (concluding that the plaintiff's allegation that her manager "consistently sexually harassed her during her 2 ½ year tenure" created "at least" a genuine issue of material fact regarding whether the harassment was severe or pervasive); *Harper v. City of Jackson Mun. Sch. Dist.*, 414 F. Supp. 2d 595, 603 (S.D. Miss. 2005) ("Harper's allegations that Casher subjected her to sexual propositions, sexual innuendoes, and offensive physical contact are sufficient to create a genuine issue of material fact on whether she encountered sufficiently severe or pervasive sexual harassment.").

3.   Defendant's exercise of reasonable care to prevent and correct sexual harassment

The undisputed summary judgment evidence supports a conclusion that Defendant took reasonable care to follow its own anti-harassment policies and procedures and that Defendant acted swiftly to address Plaintiff's complaints as soon as becoming aware of them. Although Plaintiff argues that Defendant offered her no formal job training when she joined the EEO office, the facts are clear that she was nonetheless well-aware of the VA's sexual harassment policies and procedures for filing workplace harassment complaints. Specifically, Plaintiff

16

acknowledged receipt of two internal memoranda detailing the VA's policies on sexual harassment, prevention, and the complaints process. Ex. [44-1] at 40-44; Ex. [44-12]; Ex. [44-13]. She also testified that when she was hired as EEO program assistant in March 2017, before Hardy's harassment began, she already "had an idea of what the EEO complaint process was." Ex. [44-1] 39. Plaintiff further testified that beginning in April or May 2017, she conducted biweekly trainings on these policies for other VA employees. *Id.* at 39, 46-47. The VA's training materials used by Plaintiff during those trainings (1) expressly state that victims have a responsibility to immediately report sexual harassment for investigation, (2) outline who victims should contact to make a report, and (3) advise that a victim has a "firm deadline" of forty-five days to contact an EEO officer about her claims or the complaint "will not be heard." Ex. [44-1] at 45-46; Ex. [44-9] at 7, 41-42.

Although Plaintiff waited more than six months to report Hardy's behavior – well outside of the time period required by law and by the VA's policies – it is undisputed that Defendant immediately commenced an investigation into Hardy's conduct and ensured that she would no longer work with him. In direct contradiction to her prior contemporaneous statements from 2017, Plaintiff claims that she first reported the sexual harassment to Ceasar and Booker on October 23, 2017, and that she was detailed to MAS eight days later. *Compare* Ex. [44-1] at 130-32 (testifying that she showed Ceasar and Booker Hardy's harassing text messages at a restaurant on October 23, 2017) with Ex. [44-3] at 3 (email from Plaintiff dated November 17, 2017, stating "Ms. Porter asked if I had shared this information

[regarding the sexual harassment] with anyone else and I told her no except for Ms. Mary Sloan on October 30th"). Defendant argues that Plaintiff was moved to MAS on October 31, 2017, just one day after her formal complaint. Mem. [44] at 13. Even construing this dispute of fact in Plaintiff's favor, the Fifth Circuit has found remedial employer actions involving delays of one week or more to be reasonable under the first prong of the Ellerth/Faragher defense. *See, e.g., Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 266 (5th Cir. 1999) (holding a company's response one month after an employee's complaint to be "prompt"); *Frazer v. Angelina Coll.*, Nos. 02-41182, 02-41226, 2003 U.S. App. LEXIS 28907, at *1 (5th Cir. May 5, 2003) (holding that the defendant's investigation and remedial action within one week of the employee's complaint constituted the exercise of reasonable care).

Moreover, Plaintiff's assertions that the EEO counselors and managers involved "did not know what to do with Plaintiff's report," and that Defendant acted unreasonably when it "returned Plaintiff to Hardy despite its knowledge of his harassment" are plainly contradicted by the evidence. Plaintiff was detailed to MAS on October 31, 2017, briefly returned to EEO, and then reassigned to MAS where she remained until April 2018. Ex. [44-1] at 161-62; Ex. [44-4] at 2-3; Ex. [44-8]. Plaintiff does not dispute that Hardy was away from the office during the short period of time when she was returned from MAS back to EEO, and she testified that she did not see him again after October 31, 2017. *Id.* Within approximately six weeks of Plaintiff's formal complaint to ORM, Hardy was transferred out of the EEO office, Ex. [44-6], and two weeks after his transfer, Defendant proposed his

removal, Ex. [44-7]. As a result of Defendant's swift investigation and remedial action, Hardy resigned in lieu of termination. Ex. [44-1] at 41.

The undisputed facts demonstrate that Defendant's anti-harassment policies and response to Plaintiff's claims were sufficient to satisfy the first prong of the Ellerth/Faragher defense. *See Casiano*, 213 F.3d at 286-87 (the employee's admitted knowledge of the employer's policy prohibiting sexual harassment and complaint procedure and the employer's prompt investigation of the complaint established that employer "exercised reasonable care to prevent and, if not prevented, to correct promptly any sexually harassing behavior by supervisory personnel"); *Little v. K & B Miss. Corp.*, No. 3:06-cv-501-WHB-LRA, 2007 U.S. Dist. LEXIS 63230, at *16 (S.D. Miss. Aug. 27, 2007) ("Based on the policies and procedures implemented by Rite Aid, the Court finds that it did exercise reasonable care to prevent and promptly correct sexual harassment in the workplace, thus satisfying the first prong of the Ellerth/Faragher affirmative defense.").

4.    <u>Plaintiff's failure to take advantage of preventive or corrective opportunities</u>

Plaintiff's failure to promptly invoke the VA's complaint process allowed Hardy to continue the harassment for over six months. Once Plaintiff finally did report the harassment, remedial action was taken within days. "The second prong of the Faragher/Ellerth defense implements a 'policy imported from the general theory of damages that a victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the damages that result from violations of the statute.'" *Harper*, 414 F. Supp. 2d at 606-07 (citing *Faragher*, 524 U.S. at 806

19

(internal quotations omitted)). "And while proof that an employee failed to fulfill the

. . . obligation of reasonable care to avoid harm is not limited to showing an

unreasonable failure to use any complaint procedure provided by the employer, a

demonstration of such failure will normally suffice to satisfy the employer's burden

under the second element of the defense." *Id.* (citing *Faragher*, 524 U.S. at 807-08).

Plaintiff attempts to justify her delay in reporting Hardy's conduct by stating

that she was afraid of retaliation or inaction by the VA, because of Hardy's

inappropriate banter with employees, and because she had heard about other

allegations against him. Ex. [44-1] at 64, 72-76, 103. However, Plaintiff's

generalized fear of retaliation is insufficient to defeat Defendant's Ellerth/Faragher

defense, for the reasons explained by the court in *Young v. R.R. Morrison and Son,*

*Inc.*:

> All harassment victims risk retaliation when they complain. **For Title
> VII to be properly facilitated, the reasons for not complaining
> about harassment should be substantiated and based upon
> objective evidence that some significant retaliation will take
> place.** For example, a plaintiff may bring forward evidence of prior
> unresponsive action by the company or management to actual
> complaints. Here, there was no evidence that Morrison had ever taken
> any adverse tangible employment action against complaining employees
> as that term is defined by the Supreme Court. The court is of the opinion
> that Young's fears of retaliation were subjective and generalized rather
> than objective and specific and her failure to utilize Morrison's
> complaint procedure cannot be held to be reasonable in light of the
> purposes of the Ellerth/Faragher affirmative defense.

159 F. Supp. 2d 921, 926-27 (N.D. Miss. 2000) (citations and quotation marks

omitted; emphasis added). Plaintiff's vague claims that "Mr. Hardy would joke

about how he had EEO complaints filed against him and how he was able to dismiss

them," or that he had the police called on him "and nothing was done to him" do not constitute sufficient evidence of prior reprisal or inaction by Defendant to support an "objective and specific" fear of retaliation, and are thus insufficient to overcome the second prong of the Ellerth/Faragher defense. *Id.*; Ex. [44-1] at 75; *see Williams*, 2007 U.S. Dist. LEXIS 95568, at *23-24 ("Though Williams alludes to the generalized fear that she would be retaliated against for reporting the harassment, this alone does not excuse her failure to report . . . Where, as here, the victim failed to substantiate her fears in the summary judgment record, those fears are legally insufficient to bar application of Barnhill's affirmative defense."); *Harper*, 414 F. Supp. 2d at 608 (concluding that the defendant had satisfied the second prong of the Ellerth/Faragher defense where plaintiff raised only subjective fears of reprisal, inaction, and that her complaints would not be believed and failed to present evidence of prior retaliation, inaction, or dismissiveness regarding complaints by the defendant). The Court finds that Defendant is entitled to summary judgment based upon the Ellerth/Faragher defense.

## III. CONCLUSION

The Court concludes that Defendant is entitled to summary judgment on Plaintiff's claims. To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Denis McDonough, Secretary for the U.S. Department of Veterans Affairs' Motion [44] for Summary Judgment is **GRANTED,** and Plaintiff Candace E. Taylor's claims are **DISMISSED WITH PREJUDICE.** The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 3rd day of February, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE